UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Misc. Case No._____

| | |
|---|---|
| CHARLES OAKLEY,<br><br>*Petitioner,*<br><br>v.<br><br>JAYSON JACKNOW<br><br>*Respondent.* | Related Case No.: 17-cv-6903 (RJS) |

**PETITIONER CHARLES OAKLEY'S MOTION TO COMPEL JAYSON JACKNOW'S COMPLIANCE WITH SUBPOENA**

Plaintiff Charles Oakley ("Plaintiff" or "Mr. Oakley"), by and through his undersigned counsel, respectfully moves this Court for an Order compelling Jayson Jacknow to comply with the deposition subpoena, attached hereto as Ex. A, with proof of service attached hereto as Ex. B.

## FACTUAL BACKGROUND

**I.   Facts**

On February 8, 2017, Mr. Oakley entered Madison Square Garden (the "Garden") to watch a Knicks game. ¶¶ 26, 29.[1] Mr. Oakley entered the arena without incident and proceeded to his seats, which were located several rows behind where Dolan was sitting. ¶¶ 30-32. Within minutes of unobtrusively taking his seat, Dolan signaled to Defendants MSG Networks Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC's ("Defendants" or "MSG") security guards who proceeded to surround Mr. Oakley and demand that he leave the Garden. ¶¶

---

[1]   "¶ \_\_" or "¶¶ \_\_" throughout this memorandum of law cite paragraphs within Plaintiff's Second Amended Complaint, attached as Ex. C to the Declaration of Valdi Licul ("Licul Decl.") and previously filed with the Court on April 18, 2024, unless otherwise expressly stated.

34-38. When Mr. Oakley requested an explanation as to why he was being forced to leave the Garden when he had done nothing wrong, the security guards refused to answer, instead demanding to know why he was sitting close to Dolan. ¶ 39.

At the guards' instruction, Mr. Oakley rose to his feet, at which point he was immediately pushed/pulled backwards by Defendants' security guards. ¶¶41-42. Though Mr. Oakley attempted to defuse the situation by assuming a defensive posture, Defendants' security personnel grabbed him and pushed him to the ground. ¶¶ 43-48.

When Mr. Oakley stood up, the security guards continued to demand that Mr. Oakley leave the Garden immediately. ¶ 49. When Mr. Oakley again asked for an explanation as to his removal from the Garden, the security guards further escalated the incident by physically grabbing Mr. Oakley in an effort to forcibly compel him to leave the Garden and throwing him to the ground. ¶¶ 50, 52. Mr. Oakley was thereafter placed in restraints and roughly thrown out of the Garden; in doing so, Defendants greatly exceeded the amount of force that was necessary, especially given that Mr. Oakley had not instigated the violent conduct and had done nothing warranting removal. ¶¶ 46, 50, 54, 55.

## II.     Procedural Background

On September 12, 2017, Plaintiff commenced this action against Defendants, asserting, *inter alia*, claims for assault and battery. 17 Civ. 06903 (RJS), Dkt. 1. On April 18, 2024, Plaintiff filed his Second Amended Complaint. Licul Decl. Ex. C. Defendants subsequently moved to dismiss. The Court granted the motion, which Order was reversed by the Second Circuit. Oakley v. Dolan, 980 F.3d 279 (2d Cir. 2020). Defendants then moved for pre-discovery summary judgment based on video evidence, which was granted, "[b]ecause," the District Court held, "'no reasonable jury could,' in light of the videos, determine that MSG guards used unreasonable force

to remove Oakley from the premise." Oakley v. MSG Networks, No. 17 Civ. 6903 (RJS), 2021 WL 5180229, at *8 (S.D.N.Y. Nov. 8, 2021) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

On May 5, 2023, the Second Circuit granted Plaintiff's appeal and reversed summary judgment—its second reversal in this case. In so holding, the Second Circuit examined all of the available videos of Oakley's removal from the Garden and found that they did not "record the initial conversation between Oakley and the MSG security guards, and it is difficult to clearly see what happened." Oakley v. Dolan, No. 21 Civ. 2939, 2023 WL 3263618, at *3 (2d Cir. May 5, 2023). As a result, the Second Circuit found that the Videos do "not compel the conclusions that Oakley was provided a reasonable opportunity to leave the Garden and that any force used by the guards during that initial encounter was reasonable." Id. The Second Circuit therefore held that Plaintiff's claims must ultimately be adjudicated by a jury: "once a jury sorts out what exactly happened, it must make a determination as to whether the force used to eject Oakley was reasonable." Id.

The parties are now proceeding through the discovery process in the Southern District of New York before Judge Sullivan[2], which is scheduled to end January 31, 2025. Discovery has shown that Respondent Jayson Jacknow possesses crucial information regarding Oakley's ejection from Madison Square Garden on February 8, 2017, as made evident by Defendants' responses to Interrogatories, served to Petitioner on July 1, 2024. In these responses, Defendants identified Respondent Jacknow as an important percipient witness. Specifically, they disclosed him as a "Supervisor" working for Madison Square Garden on the evening of February 8, 2017. They identified him as a person "who observed that Oakley was abusive towards any other person . . . on February 8, 2017" and—crucially—as a person "who participated in removing Oakley from the

---

[2] Sitting by designation since his appointment to the Second Circuit.

Garden on February 8, 2017." Licul Decl. Ex. D, Interrogatory Response No. 16. Accordingly, because it was also disclosed in the Interrogatories that Jacknow no longer worked for the Defendants, Oakley served Jacknow a subpoena for documents and to appear at a deposition. Oakley also served deposition notices or subpoenas on *all* of the individuals identified in Defendants' Interrogatory responses. Licul Decl. ¶ 7.

Given the Court's related rulings, these objections hold no water. Defendants previously objected to searching its employees (including Jacknow)[3] for responsive documents, and also objected to the deposition of its CEO, Dolan. In an Order dated September 10, 2024, Judge Sullivan resolved these objections, largely in Petitioner's favor. Defendants had argued that such discovery went beyond the issues remaining after the two appeals. Joint Ltr., 17 Civ. 06903 (RJS), Dkt. 177 at 5-6. The court disagreed. As to Dolan, the court held that Oakley had alleged that Dolan personally directed the removal, making him a relevant witness both for document searches and a deposition. See Oakley v. MSG Networks, Inc., No. 17 Civ. 6903 (RJS), 2024 WL 4134903, at *3 (S.D.N.Y. Sept. 10, 2024). As to all of the individuals named in Defendants' Interrogatory responses (one of whom was Jacknow), the Court held that that their "observations and recollections . . . would shed light on whether the force used to remove Oakley was reasonable," and ordered that their documents and records be searched. Id. at *4.[4]

In Jacknow's subsequent response to the subpoena served on him, he agreed to search for documents but lodged frivolous objections to the deposition subpoena and refused to comply. At first, he argued that he could not be compelled to appear because he lived over 100 miles from the

---

[3] That is, to the extent that his records remained in the Defendants' possession in corporate systems and the like.

[4] The Court generally limited document productions to the period from February 8, 2017 to March 8, 2017, and the parties agree that this is the scope of any subsequent searches of subpoenaed witnesses, too.

Southern District of New York. After repeated letters, emails, and conferences, he finally conceded that this was the wrong reading of the rules and that he was in fact reachable by the subpoena power of the federal courts of New York, even as a citizen of Florida. Licul Decl. Ex. E. Still, he maintained objections that the subpoena was "unduly burdensome, seek[s] cumulative information, and information that is disproportionate to the needs of the case." Licul Decl. Ex. E. In a conference on September 30, 2024, counsel for Petitioner warned him, through his attorneys, that if they had objections, it was their duty to file a Motion to Quash. Jacknow refused to do so and is now in contempt of the deposition subpoena.

## ARGUMENT

**I. The Subpoena Was Properly Issued in The United States District Court for the Southern District Of New York And Served on Jayson Jackson and Thus May Be Properly Enforced by This Court**

### A. The Subpoena was Properly Issued in the Southern District Of New York

Fed. R. Civ. P. ("FRCP") 45 governs non-party discovery in federal courts. Under FRCP 45(a)(2), a subpoena must issue from the court where the action is pending. Through the subpoena, a party may command a non-party to attend a deposition at any location within 100 miles of where the non-party resides. FRCP 45(a)(c)(1)(A)

Here, the Subpoena was properly issued in the District Court for the Southern District of New York. Licul Decl. Ex. A. Mr. Jacknow lives in Coral Springs. Licul Decl. Ex. D. The subpoena commands compliance in Fort Lauderdale, Fl, which is within 100 miles of Coral Springs. The subpoena was thus validly issued.

### B. The Subpoena was Properly Served on Jayson Jackson

The Subpoena was then properly served on Jayson Jackson in accordance with the requirements of FRCP 45, through his attorney, who accepted service. Licul Decl. Ex. B.

### C. The Subpoena May be Properly Enforced by this Court

The Southern District of Florida may compel Jayson Jacknow to respond to Plaintiff Oakley's properly issued and served Subpoena. Where a non-party fails to comply with a subpoena, the court for the district where the deposition is to occur may issue an order compelling discovery. FRCP 37(a)(2), (a)(3)(B)(ii), 45(d)(2)(B)(i); *see also* FRCP 45(g) (authorizing the court for the district where compliance is required to hold in contempt a non- party who fails to obey a properly issued and served subpoena).

Here, the place of compliance is Fort Lauderdale. The Southern District of Florida encompasses Fort Lauderdale. The subpoena is therefore enforceable by this Court.

## II. Jacknow Failed to File a Motion to Quash and May Now be Compelled to Appear

A subpoena is a "mandate[] of the court" and thus "defiance of a subpoena is . . . an act in defiance of a court order, and failing to obey is a contempt of court." FRCP 45, Advisory Committee Notes to 1991 Amendment. Under FRCP 45(g), this Court may therefore "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Accordingly, "[u]nder Rule 45(g), Fed. R. Civ. P., a non-party's failure to comply with a subpoena-even in the absence of further court order-exposes that non-party to possible contempt." Gomez v. Mylooks, Inc., No. 13 Civ. 62244, 2014 WL 11706434, at *2 (S.D. Fla. June 25, 2014), report and recommendation adopted, No. 13 Civ. 62244, 2014 WL 11721414 (S.D. Fla. July 28, 2014). Here, the Court should at a minimum strike Jacknow's objections and compel him to be deposed without further litigation, given his "defiance of a court order." Cf. Adekunle v. Care Centers of Nassau, LLC, No. 3:12 Civ. 1363-J-34 (MCR), 2013 WL 12157549, at *1 (M.D. Fla.

Nov. 13, 2013) (where third-party recipient of a subpoena responded to document subpoena, but refused to cooperate in scheduling his deposition, court granted a motion to compel).

Nor can Jacknow be considered in compliance with the subpoena merely because he objected to the subpoena through counsel.[5] While Rule 45 allows a party to submit written objections in lieu of complying with a request for *documents*, it makes no such provision for a deposition subpoena.  Compare Fed. R. Civ. P. 45(d)(2)(B) (permitting non-party to serve written objections in response to document subpoena, in lieu of compliance) with 45(d)(2)(3) (permitting quashal otherwise "on timely motion").  "If a subpoenaed party could simply object to a subpoena for deposition testimony, a motion to quash would never be required," and Rule 45's provision for a motion to quash would be pure surplusage.  Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc., No. 21 Civ. 1197 (W-MDD), 2022 WL 6785753, at *3 (S.D. Cal. Oct. 11, 2022); See Aetna Cas. & Sur. Co. v. Rodco Autobody, 130 F.R.D. 2, 3 (D. Mass. 1990) ("However, the fact that objections were served is no excuse whatsoever not to attend the deposition. If the witnesses considered that they had grounds not to appear, they were required to file a motion for a protective order.")

### III. The Scope of Discovery Requested by The Subpoena is Appropriate Under FRCP 45

In any case, Jacknow's objections that his deposition is burdensome, cumulative, and disproportionate to the needs of the case, are all without merit.

Jacknow's objection of burden is easily set aside.  His deposition was scheduled for Fort Lauderdale, a drive of under one hour under normal circumstances.  See CCB LLC v. Banktrust, No. 3:10 Civ. 228 (LAC) (EMT), 2010 WL 4038740, at *1 n.2 (N.D. Fla. Oct. 14, 2010) (non-party's "deposition was scheduled in a neighboring town, so it would not have been inconvenient

---

[5] Jacknow is represented by counsel for the defendants.

or expensive to attend the deposition.")  He has submitted no affidavit or other information that would even remotely carry his burden of proof to show that the subpoena is unduly burdensome (even if he had validly moved to quash).  See Whatley v. World Fuel Servs. Corp., No. 20 MC. 20993, 2020 WL 2616209, at *3 (S.D. Fla. May 22, 2020) ("Defendant claims that compliance with the subpoena will cost approximately $50,000, yet fails to provide an affidavit or declaration in support of that amount.").  Any burden objection is therefore wholly without merit.

Jacknow also claims that his deposition is cumulative and disproportionate to the needs of the case.  The Court need look no further than the Orders issued by Judge Sullivan in the main litigation to see that these objections, too, lack all merit.  As set forth above, Jacknow was one of the individuals directly involved in ejecting Oakley and was identified as such in Defendants' Interrogatory responses.  The Court overruled all of Defendants' objections to searching such Interrogatory-identified witnesses, and compelled the deposition of Dolan precisely because Dolan was involved in ejecting Oakley from Madison Square Garden.  The Court's reasoning clearly also applies to Jacknow, who, like Dolan, participated in the removal.

In any case, Jacknow's barebones objection is easily overruled.  While he has generally argued that the other depositions already agreed-to or ordered will give Petitioner a sufficient opportunity to ask questions about the events of February 8, 2017, he has not cited any authority that barred the deposition of a relevant percipient witness on the mere showing that some related discovery had already been taken from Defendants.  Even giving credence to the idea that the security guards' experiences and memories will overlap to some extent, Jacknow was a "Supervisor," which could have impacted his duties and actions on the night in question in a way that sharply distinguishes his experiences and memory from other witnesses, most of whom had

different titles.  Cf. Est. of Klieman v. Palestinian Auth., 272 F.R.D. 253, 259 (D.D.C. 2011) ("a review of these individuals' titles suggests that while there may be some duplication, it would not mitigate against issuing the letters of request plaintiffs seek").  For instance, as a Supervisor he may have been privy to orders from Dolan, or may have had the responsibility to file an incident report after the fact, while the lower-level guards involved would be unable to give such evidence.  Given the District Court's ruling that Dolan's instructions to the guards are a relevant issue in the case, this is crucial evidence.  See Oakley v. Dolan, No. 17 Civ. 6903 (RJS), Dkt. 158 at 4-5.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court compel Jayson Jacknow to appear for a deposition.

Dated: October 18, 2024
      Fort Lauderdale, Florida

Respectfully submitted,

/s/ *Joseph R. Fazio, III*
Joseph R. Fazio, III

**THE LAW OFFICES OF
JOSEPH R. FAZIO, P.A.**
633 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 463-0585
Facsimile:  (954) 767-9461
jfazio@jfaziolaw.com

**WIGDOR LLP**
Valdi Licul
(*pro hac vice* pending)
John S. Crain
(*pro hac vice* pending)
85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@Wigdorlaw.com
jcrain@wigdorlaw.com

**CERTIFICATE PURSUANT TO FRCP 37 AND LOCAL RULE 7.1(a)(3)**

The undersigned certifies that counsel for Petitioner Oakley has attempted to confer with counsel for Respondent Jacknow in an effort to resolve the issues raised in this Motion but was unable to reach a resolution. Specifically, the parties discussed these depositions in a conference on September 3, 2024. While the parties did ultimately resolve objections about the 100-mile rule, as set forth above, they could not otherwise reach agreement on the other issues described above. Specifically, in a conference on September 30, 2024, Plaintiff-Petitioner informed Jacknow (through his counsel) of his duty to move to quash, and he refused to respond or otherwise take any action.

Dated: October 18, 2024
       Fort Lauderdale, Florida

Respectfully submitted,

*/s/ Joseph R. Fazio, III*
Joseph R. Fazio, III

**THE LAW OFFICES OF**
**JOSEPH R. FAZIO, P.A.**

633 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 463-0585
Facsimile: (954) 767-9461
jfazio@jfaziolaw.com

**WIGDOR LLP**

Valdi Licul
(*pro hac vice* pending)
John S. Crain
(*pro hac vice* pending)
85 Fifth Avenue
New York, NY 10003

Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document will be served on Respondent Jayson Jacknow by email to his counsel, with his consent, under Rule 5 of the Federal Rules of Civil Procedure. If Jacknow does not consent to service through counsel, Plaintiff-Petitioner will promptly serve this Petition by mail.

Dated: October 18, 2024
Fort Lauderdale, Florida

*/s/ Joseph R. Fazio, III*
Joseph R. Fazio, III

**THE LAW OFFICES OF
JOSEPH R. FAZIO, P.A.**

633 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 463-0585
Facsimile: (954) 767-9461
jfazio@jfaziolaw.com

**WIGDOR LLP**

Valdi Licul
(*pro hac vice* pending)
John S. Crain
(*pro hac vice* pending)
85 Fifth Avenue
New York, NY 10003

Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com